UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| NATHANIEL JOHNROSS WEIBEL,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CIV. 17-5072-JLV<br><br>ORDER |

**INTRODUCTION**

Petitioner Nathaniel Weibel filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2255 ("2255 Petition"). (Docket 1). The court filed an order dismissing all of Mr. Weibel's claims except his claim that his counsel at the time of sentencing was ineffective for failing to file a direct appeal in his criminal case United States v. Nathaniel Johnross Weibel, CR. 16-50027 (D.S.D. 2017).[1] (Docket 35). Pursuant to a standing order of April 1, 2018, and 28 U.S.C. § 636(b)(1)(B), the matter was referred to United States Magistrate Judge Daneta Wollmann for a report and recommendation ("R&R"). The magistrate judge recommended the court dismiss with prejudice petitioner's Sixth Amendment claim. (Docket 47 at p. 11). Mr. Weibel timely filed objections to the R&R. (Docket 51). For the reasons set forth below, the

---

[1]All references to the criminal case will be cited as "CR. Docket ____."
All references to the civil habeas proceeding will be cited as "Docket ____."

court overrules Mr. Weibel's objections and adopts the R&R consistent with this order.

**OBJECTIONS**

Mr. Weibel asserts five objections to the R&R. Those are summarized as follows:

1. The magistrate judge erred in finding Attorney Diggins' notes indicate Mr. Weibel sought to obtain a copy of the sentencing transcript as opposed to petitioner instructing Mr. Diggins to file a notice of appeal. (Docket 51 ¶ 2).

2. The magistrate judge erred in finding Attorney Diggins' testimony more credible than Mr. Weibel's testimony on the question of whether petitioner instructed his attorney to file a notice of appeal. Id. ¶ 3.

3. The magistrate judge erred in finding Mr. Weibel did not clearly manifest his instructions to his attorney to file a notice of appeal. Id. ¶ 4.

4. The magistrate judge erred in concluding Barger[2] applied to petitioner's case.

5. The magistrate judge erred in recommending Mr. Weibel's Sixth Amendment claim should be dismissed with prejudice. Id. ¶ 1.

Petitioner's objections will be addressed in the manner deemed most appropriate by the court.

**ANALYSIS**

"[O]nce a party makes a proper objection to a magistrate's finding, including a credibility finding, the district court *must* make a de novo

---

[2]Barger v. United States, 204 F.3d 1180 (8th Cir. 2000).

2

determination of that finding." Taylor v. Farrier, 910 F.2d 518, 521 (8th Cir. 1990) (emphasis in original). "The court need not conduct a de novo hearing, . . . but must nonetheless make a de novo determination of that finding based on the record." Id. (internal citation omitted). "In conducting [de novo] review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Jones v. Pillow, 47 F.3d 251, 252 (8th Cir. 1995) (internal citation omitted). "[A] district judge must affirmatively state that he has read the transcript . . . ." United States v. Hamell, 931, F.2d 466, 468 (8th Cir. 1991).

Fed. R. Civ. P. 52(a)(6) provides, in relevant part, that "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Judging witness credibility is a multi-faceted process.

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. . . . This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.

Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) (internal citation omitted).

3

Section 636(b) of Title 28 of the United States Code "requires the district court to review de novo those portions of a magistrate judge's reports and findings which are objected to by a party." United States v. Storey, 990 F.2d 1094, 1097 (8th Cir. 1993). See also Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Mr. Weibel was charged in a multi-count indictment. (CR. Docket 20). He was charged with two counts of attempted sexual exploitation of a minor in violation of 18 U.S.C. §§ 2251(a) and (e); six counts of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b); and seven counts of transfer of obscene material to a minor in violation of 18 U.S.C. § 1470. Id.

Exactly one year later, Mr. Weibel entered into a plea agreement with the government. (CR. Dockets 65-68). As part of the plea agreement a superseding information was filed which charged Mr. Weibel with one count of attempted enticement of six minors using the internet in violation of 18 U.S.C. §§ 2422(b) and 2427. (CR. Docket 69). Mr. Weibel pled guilty to the superseding information. (CR. Dockets 71 & 74). The court adjudged Mr. Weibel "guilty of attempted enticement of a minor as charged in the superseding information." (CR. Docket 75). The court ordered the preparation of a psychosexual evaluation report ("PER"). (CR. Docket 78). A

presentence investigation report ("PSR") and PER were filed. (CR. Dockets 85 & 88).

The court conducted a sentencing hearing on June 21, 2017. (CR. Docket 90). The court sentenced Mr. Weibel to 300 months incarceration in the custody of the United States Bureau of Prisons, together with supervised release for life on mandatory and special conditions. (CR. Docket 91).

On September 11, 2017, Mr. Weibel timely filed a petition pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition") to vacate or set aside his criminal conviction. (Docket 1). The court entered an order dismissing all of petitioner's claims except his claim that his then attorney, Assistant Federal Public Defender Thomas Diggins, was ineffective for failing to file a direct appeal in Mr. Weibel's criminal case. ("Sixth Amendment Claim"). (Docket 35).

Magistrate Judge Wollmann held an evidentiary hearing on petitioner's Sixth Amendment Claim. Evidence developed in the hearing will be presented as necessary to resolve each of Mr. Weibel's objections.

Following sentencing, Mr. Diggins sent a letter dated June 22, 2017, to Mr. Weibel. (Hearing Exhibit A). As relevant to Mr. Weibel's 2255 Petition, the letter stated:

> Enclosed is a copy of the Judgment that I received in your case. This letter is to inform you that your deadline for filing an appeal of your sentence is July 5, 2017. I will visit you in person before June 28, 2017, to discuss your right to appeal.

Id.

On June 26, 2017, Mr. Diggins visited Mr. Weibel at the Pennington County Jail.  (Docket 47 at p. 4).   Mr. Weibel testified they met privately in a "conference room . . . on the second floor of the jail."  (Docket 48 at p. 12:11-12).[3]   Mr. Weibel asked Mr. Diggins "how [can we] do this appeal."  Id. at p. 13:20.   According to Mr. Weibel, Mr. Diggins' response was that he would "have to go through and look at everything because I signed [a waiver of appeal as part of the plea agreement]."  Id. at p. 13:20-22.   Mr. Weibel insists that during their first meeting he told Mr. Diggins he "wanted a notice of appeal filed."  Id. at pp. 14:24-15:2.

During their meeting, Mr. Diggins prepared notes of his conversation with Mr. Weibel.  (Hearing Exhibit B).   Mr. Diggins testified his notes fairly and accurately depict the conversations he had with Mr. Weibel post-sentencing.[4]   (Docket 48 at p. 39:16-19).   Mr. Diggins employed his own short-hand form of contemporaneous notetaking to summarize the content of his conversation with Mr. Weibel.  Id. at p. 40:22.

During their meeting, Mr. Diggins testified he "advised [Mr. Weibel] of his appeal rights."  Id. at p. 41:2-3.   Mr. Diggins asserted his notes confirm his

---

[3]Because the evidentiary hearing had to be conducted on two separate days, the court will cite to the docket entry in CM/ECF and the page and line number of that entry as opposed to the page of the transcript.

[4]Mr. Diggins redacted the telephone number of Mr. Weibel's brother. (Docket 48 at p. 39:19-21).   Mr. Weibel's habeas attorney did not object to the redaction.  Id. at pp. 39:25-40:1.

6

recollection of their conversation: "w/Δ @ PCJ adv. Re appeal rts" stands for met "with defendant . . . at . . . Pennington County Jail. . . . [and] advised him of his appeal rights." Id. at pp. 40:22-24 & 41:1-3 (referencing Exhibit B at p. 1).

The next note has a star next to it with the following notation: "Δ wants sent. transcript" which Mr. Diggins was "certain" meant Mr. Weibel wants a copy of the sentencing transcript.[5] Id. at p. 41:1-42:2 (referencing Exhibit B at p. 1). The next line is "appeal nec" which Mr. Diggins testified was a note to himself asking whether "it was necessary to file an appeal to get the transcript of the sentencing hearing." Id. at p. 42:4-9 (referencing Exhibit B at p. 1). Mr. Diggins stated that "appeal necessary" was "not a reference in general to filing an appeal, but rather to whether or not [he] needed to [file a notice of appeal] to get the sentencing transcript." Id. at p. 42:10-13. When asked if the note meant Mr. Weibel told him to file an appeal, Mr. Diggins responded "[t]hat's not what it means to me. It's a question as to could we get the transcript without filing an appeal." Id. at p. 43:4-7. He testified there was "no doubt in my mind that when I wrote 'appeal nec,' I was referring to the sentencing transcript." Id. at p. 43:11-13 (capitalization omitted).

---

[5]Mr. Diggins testified he uses stars for two reasons. "One is something's very important I want to draw my attention to it later. The other is it's often used where I need to do something at a later time." (Docket 48 at pp. 46:22-47:1).

Beneath "appeal nec" Mr. Diggins wrote "w/SM–write to Judy Thompson ct. reporter." (Exhibit B at p. 1). Mr. Diggins testified that after meeting with Mr. Weibel, he met "with Scott McGregor, who's a research and writing attorney [he] work[ed] with." (Docket 48 at p. 42:15-16). Mr. Diggins recalls meeting with Mr. McGregor who said an appeal was not necessary and all that had to be done was to write to the court reporter, Judy Thompson, to get a copy of the sentencing transcript.[6] Id. at p. 42:19-23. Mr. Diggins inserted the comment into his notes as a result of his meeting with Mr. McGregor. Id. at pp. 43:23-44:6.

The next notation has a star next to it and Mr. Diggins wrote "what is needed for habeas." (Exhibit B at p. 1). Below that notation Mr. Diggins wrote "w/SM: § 2255; no appeal nec." Id. Mr. Diggins testified this notation referenced his conversation with Mr. McGregor who told him "no appeal [was] necessary to file a habeas or 2255." (Docket 48 at p. 43:19-20). Again, the comment was inserted into his notes after Mr. Diggins' meeting with Mr. McGregor. Id. at pp. 43:23-44:6. Mr. Diggins believes he

> had a discussion with Mr. Weibel that day regarding the appeal waiver [in the plea agreement] and the fact that his sentence, although shockingly long, was below the guideline range and would fall into that waiver. And I believe connecting that to the next note regarding habeas, that we had a discussion about [Ms.] Bolinger's

---

[6]Mr. Diggins knew Mr. McGregor had at least ten years' experience in the Federal Public Defender's Office and specialized in appeals and brief writing. (Docket 49 at p. 8:7-17). Mr. Diggins acknowledged that had he filed an appeal for Mr. Weibel, it would have been his first appeal since becoming an Assistant Federal Public Defender. (Docket 49 at p. 6:3-4).

8

representation of him and whether he could seek relief via the plea agreement, when she represented him.[7]

Id. at p. 61:4-11.

During the hearing, Mr. Diggins was asked if at their first meeting Mr. Weibel asked that an appeal be filed. Mr. Diggins responded: "[f]irst of all, I don't recollect him saying that. Had he said that, I would have noted it, and I would have filed the notice of appeal." Id. at p. 44:13-18. Mr. Diggins understood it was his obligation to file a notice of appeal if his client had asked that an appeal be filed. Id. at p. 44:19-21.

Mr. Weibel's next communication was a voicemail to Mr. Diggins. The second page of Mr. Diggins' notes indicates on June 28, 2017, "tc fr ∆" which meant a "telephone call from defendant," in his shorthand. Id. at p. 45:16-20 (referencing Exhibit B at p. 2). The next line "vsmg" stood for the defendant "left me a message," meaning a voicemail. Id. at p. 45:23 (referencing Exhibit B at p. 2). Mr. Weibel's message was to bring his "PSI," which is the state court equivalent of presentence investigation report ("PSR") in federal court and "superceding indict" meant superseding indictment. Id. at p. 46:1-2. To the right of that notation, Mr. Diggins wrote "bring when visit." Id. at p.46:2-3.

Mr. Diggins met Mr. Weibel at the Pennington County Jail on June 30, 2017. Id. at p. 46:15-16 (referencing Exhibit B at p. 3). For this meeting Mr.

---

[7]Ms. Bolinger was the Assistant Federal Public Defender who represented Mr. Weibel through the change of plea hearing. CR. Dockets 65-66 & 71. When she left the office, Mr. Diggins took over the case. (Docket 48 at p. 32:3-9).

Diggins "brought copies of the indictment, the superseding information, and the presentence investigation report to Mr. Weibel." Id. at p. 46:16-19 (referencing Exhibit B at p. 3). Interpreting the next line: "adv. c/n take to prison, he knows" Mr. Diggins told Mr. Weibel "he could not take those [documents] to prison, and he told me he knew that." Id. at p. 46:19-21 (referencing Exhibit B at p. 3).

The final notes on page 3 of Mr. Diggins' notes contains his short-hand summary of his discussion with Mr. Weibel about a simple assault charge in state court. That notation was:

> call SAO re ↓ SA
> -Δ reps that current is
> for fight @ PCJ (Josh Clark)
> -adv. Δ to call 7/5 to
> check on status

(Exhibit B at p. 3). Mr. Diggins explained:

> [T]that note is to call the state's attorney's office regarding a . . . dismissal of a simple assault charge that was pending. Below that, my translation is Mr. Weibel represented to me that it was a fight at the county jail, and I believe with someone named Josh Clark. And then I advised Mr. Weibel to call me on July 5 to check the status of that. And I believe what I probably told him is that I'll call the state's attorney's office and see if we can get it resolved, so call me and I'll let you know.[8]

(Docket 48 at p. 47:2-12).

Mr. Diggins had no recollection of Mr. Weibel asking him to file a notice of appeal. Id. at p. 47:22-25. Mr. Diggins insisted he "believe[d] had [Mr.

---

[8]Mr. Diggins testified it was merely coincidence that he asked Mr. Weibel to call him about the state assault case on July 5 because the office would be closed on July 4. (Docket 48 at p. 66:15-22). Mr. Diggins stated this July 5 reference was not associated with the deadline for filing a direct appeal in Mr. Weibel's criminal case. (Docket 49 at p. 10:7-22).

10

Weibel] said that, I would have noted it and filed it [a notice of appeal]." Id. at p. 48:3-4. It was Mr. Diggins' "independent recollection" and based on his review of his notes, Mr. Weibel did not ask him to file a notice of appeal. Id. at pp. 48:24-49:1. Based on his past practice, Mr. Diggins testified that had Mr. Weibel "made that request, I would have done it." Id. at p. 49:2-3. Mr. Diggins insisted that if a client indicates "in some way, verbally or in writing, that they want an appeal filed" he would file the notice of appeal. Id. at p. 53:15-17. Mr. Diggins testified that if a client tells him to file a notice of appeal, he does not instruct them to call his office to confirm that the notice of appeal had been filed. Id. at p. 67:3-4. Rather, it was Mr. Diggins' practice to file a notice of appeal and the client receives a copy in the mail or Mr. Diggins delivers it to client. Id. at p. 67:5-6.

When asked on cross-examination if his newness to the federal system made him unsure about whether he could file a notice of appeal considering the appellate waiver in the plea agreement, Mr. Diggins answered "[n]o." Id. at pp. 67:24-68:4. He explained: "I don't think the appellate waiver would have caused me to not file an appeal had he requested one." Id. at p. 68:4-6. Mr. Diggins recalls Mr. Weibel "made comments that he may want to appeal or he may want to challenge [Ms. Bollinger's] representation because of the plea agreement that he entered in to."[9] (Docket 49 at p. 13:18-22).

---

[9] Mr. Weibel claimed Ms. Bolinger told him the judge would not sentence him to more than 10 years if he signed the plea agreement. (Docket 48 at p. 8:13-22).

11

Mr. Weibel testified he had several other meetings with Mr. Diggins and they "talked several other times about it." (Docket 48 at p. 15:3-6). Mr. Weibel stated each time he asked Mr. Diggins to file a notice of appeal. Id. at p. 15:21-24. Mr. Weibel's description of Mr. Diggins response was as follows:

> Every time it was the same story; well I got to see what I can do. I got to figure out a way around this one. I got to figure out a way. I don't know how I can get around these.
>
> That's all he wanted to talk about was he didn't know how to go around and what he would have to go through and look up stuff to figure out something.

Id. at p. 16:1-7. Mr. Weibel testified each time he met with Mr. Diggins they were able to understand each other. Id. at p. 20:7-13.

1. THE MAGISTRATE JUDGE ERRED IN FINDING ATTORNEY DIGGINS' NOTES INDICATE MR. WEIBEL SOUGHT TO OBTAIN A COPY OF THE SENTENCING TRANSCRIPT AS OPPOSED TO PETITIONER INSTRUCTING MR. DIGGINS TO FILE A NOTICE OF APPEAL

The court finds Mr. Diggins' notes properly account for the parties' conversations. It is clear Mr. Diggins was concerned with whether Mr. Weibel could obtain a copy of the sentencing transcript without filing a direct appeal. Mr. Diggins' subsequent conversation with Assistant Federal Public Defender McGregor was directed toward resolving that same question.

Mr. Diggins knew the court's sentence of 300 months custody was below the guideline sentence calculated in the PSR. On the other hand, Mr. Diggins knew Mr. Weibel's complaint of Ms. Bolinger's representation would have to be

addressed through a 2255 Petition, asserting a claim of ineffective assistance of counsel against her. Mr. Diggins' notes are consistent with that analysis.

Petitioner's first objection is overruled.

2. THE MAGISTRATE JUDGE ERRED IN FINDING ATTORNEY DIGGINS' TESTIMONY MORE CREDIBLE THAN MR. WEIBEL'S TESTIMONY ON THE QUESTION OF WHETHER PETITIONER INSTRUCTED HIS ATTORNEY TO FILE A NOTICE OF APPEAL

The magistrate judge found "the testimony of Mr. Diggins is credible and Mr. Weibel's testimony is not." (Docket 47 at p. 9). The magistrate judge found "Mr. Diggins's manner and demeanor in testifying support the court's crediting his version of events." Id. Despite Mr. Diggins being a new member of the Federal Public Defender's staff, the magistrate judge acknowledged "Mr. Diggins's understanding of a Defendant's unfettered right to appeal from state court proceedings, further credits his testimony that . . . he would have filed an appeal if instructed to do so, even if he believed the appeal would have had no merit." Id.

The court reviewed the transcripts of the evidentiary hearing and the two exhibits. In listening to the FTR audio recording and reviewing the written transcripts of the hearing before the magistrate judge, the court finds Mr. Diggins was candid about his shortcomings as a new Assistant Federal Public Defender and specific in his recollection of his conversations with Mr. Weibel.

During the hearing, the magistrate judge considered the demeanor, body language, and delivery of both Mr. Weibel and Mr. Diggins in deciding to credit Mr. Diggins' testimony over that of Mr. Weibel. As the reviewing court, this

13

court "must give due regard to the [magistrate judge's] opportunity to judge the witnesses' credibility."  Lesch v. United States, 612 F.3d 975, 980 (8th Cir. 2010) (citing Fed. R. Civ. P. 52(a)(6)).   While the court cannot consider body language, it does have the opportunity to judge the demeanor and delivery of both witnesses.

Mr. Weibel testified he had "several" conversations with Mr. Diggins and that every time he asked that an appeal be filed.   (Docket 48 at p. 15:3-6 & 21-24).   The court's impression of Mr. Weibel's testimony is that it was convenient, self-serving and generally not candid.

On the other hand, Mr. Diggins was absolutely confident Mr. Weibel did not instruct him to file a notice of appeal.   (Docket 48 at pp. 48:24-49:1) (Mr. Diggins had an independent recollection Mr. Weibel did not ask him to file a notice of appeal.).   The court adopts the magistrate judge's findings that "Mr. Diggins is an attorney in good standing with the South Dakota State Bar and the United States District Court for the District of South Dakota" and has participated in nearly "100 jury trials dating back to 1997."   (Docket 47 at p. 9).   The court finds that had Mr. Weibel asked for an appeal to be filed, Mr. Diggins would have filed a notice of appeal, regardless of his own opinion as to the merits of that action.   The court finds the testimony of Mr. Diggins was credible.

Petitioner's second objection is overruled.

3. THE MAGISTRATE JUDGE ERRED IN FINDING MR. WEIBEL DID NOT CLEARLY MANIFEST HIS INSTRUCTIONS TO HIS ATTORNEY TO FILE A NOTICE OF APPEAL

The magistrate judge found "the question of whether an appeal would be pursued was ambiguous and left without a definite resolution." (Docket 47 at p. 11). The magistrate judge concluded "[t]his evidence . . . does not prove a clear manifestation of a desire to appeal on Mr. Weibel's part to Mr. Diggins." Id.

Mr. Weibel "maintains that his testimony was accurate and that he had instructed [Mr. Diggins[ to file a notice of appeal." (Docket 51 ¶ 3). Petitioner asserts "his testimony was credible and that [Mr. Diggins] was unfamiliar with the appellate process in federal court, as he was newly hired by the Federal Public Defender's Office, [he was] not familiar with the appellate waiver process in a standard plea bargain and had not previously filed an appeal in federal court." Id.

To be entitled to habeas relief, Mr. Weibel "must have made manifest [his] desire to appeal by expressly instructing [his] attorney to appeal." Nupdal v. United States, 666 F.3d 1074, 1076 (8th Cir. 2012) (internal quotation marks and citation omitted). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." Walking Eagle v. United States, 742 F.3d 1079, 1082 (8th Cir. 2014). See also Yodprasit v. United States, 294 F.3d 966, 969 (8th Cir. 2002)

15

(the district court need not believe a petitioner's bare assertion that he asked counsel to file an appeal if the court finds evidence to the contrary more credible).

In light of the court's adoption of Mr. Diggins' version of his conversations with Mr. Weibel, the court finds that even if Mr. Weibel did ask that an appeal be filed, Mr. Weibel did not clearly manifest his instructions to his attorney. Nupdal, 666 F.3d at 1076.

Petitioner's third objection is overruled.

4. THE MAGISTRATE JUDGE ERRED IN CONCLUDING BARGER APPLIED TO PETITIONER'S CASE

The magistrate judge compared the facts in this case to the facts in Barger, 204 F.3d 1180. (Docket 47 at pp. 10-11). Mr. Weibel "objects to the magistrate's legal conclusion that the holding in Barger . . . applies to this case." (Docket 51 ¶ 5). He argues there is a "clear factual distinction between" Barger and this case. Id. Mr. Weibel contends a "careful reading of Barger" discloses that the "[c]ourt credited the testimony of the prior defense lawyer who explained that after his final conference with his client that the client 'understood that no appeal was going to be filed, and it was my understanding she had no objection to that at the time.'" Id. (citing Barger, 205 F.3d at 1181). Mr. Weibel submits that based on the attorney's testimony "the Barger Court went on to find that Barger had not clearly manifested an intent to appeal." Id. In contrast, Mr. Weibel argues that if the court finds

16

his "testimony credible, a clear manifestation of intent to appeal was presented." Id.

The court already concluded Mr. Weibel's testimony is not credible when compared to the testimony of Mr. Diggins. The petitioner's "bare assertion" is insufficient to sustain his burden of proof when the court finds Mr. Diggins' testimony more credible. Barger, 204 F.3d at 1182. See also Nupdal, 666 F.3d at 1076; Walking Eagle, 742 F.3d at 1082; and Yodprasit, 294 F.3d at 969. The magistrate judge's examination and application of Barger to petitioner's case is an appropriate analysis.

Petitioner's fourth objection is overruled.

5. THE MAGISTRATE JUDGE ERRED IN RECOMMENDING MR. WEIBEL'S SIXTH AMENDMENT CLAIM SHOULD BE DISMISSED WITH PREJUDICE

Based on his objections asserted above, Mr. Weibel objected to the magistrate judge's recommendation that his ineffective assistance of counsel claim should be dismissed with prejudice. (Docket 51 ¶ 1). Having overruled all of petitioner's objections, the court finds the magistrate judge's recommendation is the appropriate resolution of Mr. Weibel's 2255 Petition.

Petitioner's fifth objection is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that petitioner's objections (Docket 51) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 47) is adopted consistent with this order.

IT IS FURTHER ORDERED that the petition (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts, the court issues a certificate of appealability specifically limited to the issue of whether Mr. Diggins performed as effective counsel on the direct appeal question.

As to all other issues raised in Mr. Weibel's 2255 Petition the court declines to issue a certificate of appealability. Although the court declines to issue a certificate of appealability as to all other issues, Mr. Weibel may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22. See Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts and Fed. R. App. P. 22.

Dated April 8, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE